

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 1784 | **DATE** | 12/3/2004 |
| **CASE TITLE** | Gerlene Griffith vs. Jo Anne B. Barnhart | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Claimant's motion for summary judgment [14-1] is denied and the Commissioner's motion for summary judgment [15-1] is granted. The Commissioner's decision to deny Claimant's disability insurance benefits prior to October 1, 1999 is affirmed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | number of notices | | **Document Number** |
|---|---|---|---|---|---|---|
| | No notices required. | | | | | |
| ✓ | Notices mailed by judge's staff. | | | DEC 6 - 2004 | | |
| | Notified counsel by telephone. | | | date docketed | | |
| | Docketing to mail notices. | | | | | 18 |
| | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | 12/3/2004 | | |
| DK | courtroom deputy's initials | | Date/time received in central Clerk's Office | date mailed notice | | |
| | | | | DK | | |
| | | | | mailing deputy initials | | |


# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| GERLENE GRIFFITH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04 C 1784 |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART | ) | Magistrate Judge Morton Denlow |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before this Court on the parties' cross-motions for summary judgment. Claimant Gerlene Griffith ("Claimant") challenges the decision of Defendant Jo Anne B. Barnhart, Commissioner of Social Security ("Commissioner"), claiming that the Commissioner's denial of her disability insurance benefits ("DIB") should be reversed because the decision did not comply with the district court's remand order and is not supported by substantial evidence. For the reasons that follow, this Court affirms the Commissioner's decision.

## I. BACKGROUND FACTS

### A. PROCEDURAL HISTORY

Claimant applied for Disability Insurance Benefits and Supplementary Security Income on April 22, 1998, alleging that she became unable to work on



April 1, 1995 due to lupus, shortness of breath, lesion leakage, memory loss and depression. (Record ("R.") 135, 151, 165, 578-585.) Her application was denied on September 4, 1998 and her request for reconsideration was denied on October 30, 1998. (R. 102-05, 108-10.) She appealed the decision to an Administrative Law Judge ("ALJ") who denied her disability benefits on November 22, 1999. (R.17-34.) Claimant appealed the ALJ's decision to the Appeals Council of the Office of Hearings and Appeals ("Appeals Council"), which upheld the ALJ's decision. (R. 9-14, 604.)

Thereafter, Claimant commenced a civil action in this court seeking judicial review of the Commissioner's final decision. On February 6, 2002, Judge Rebecca R. Pallmeyer ordered the case remanded to the ALJ with the following directions: (1) determine the effect of Claimant's mental condition on her ability to maintain production; (2) clarify the ambiguity of Dr. Drevlow's medical assessment of Claimant's ability to work; (3) re-determine Claimant's residual functional capacity ("RFC"); and (4) determine whether Claimant could perform any jobs in the national economy. (R. 700-02); *Griffith v. Barnhart*, No. 00 C 7302, 2002 WL 181959 *13-14 (N.D. Ill. Feb. 6, 2002). The Appeals Council then vacated the Commissioner's final decision and remanded the case to the ALJ for further proceedings consistent with Judge Pallmeyer's order. (R. 703-04.) The Appeals Council noted that the Claimant filed a subsequent application for benefits and was found disabled as of January 1, 2000 (R. 627-29, 703.) A new administrative

hearing was held before the same ALJ, at which Claimant and a vocational expert ("VE") testified (R. 837-920.)

On December 26, 2002, the ALJ issued a partially favorable decision granting Claimant benefits from October 1, 1999 through December 31, 1999, but denying benefits prior to that date because she remained able to perform a range of sedentary work that included a significant number of jobs. (R. 647-60.) The Appeals Council upheld the ALJ decision on January 7, 2004. (R. 632-33.)

Claimant insists that she is entitled to receive DIB since an alleged onset date of 1995 instead of October 1, 1999. Claimant filed this action on March 8, 2004 to contest the ALJ's decision finding her not disabled prior to October 1, 1999. The relevant time period in this case is from April 1, 1995 to September 30, 1999.

This Court incorporates by reference the factual background found in Judge Pallmeyer's earlier decision. (R. 673-93.)

## B. TESTIMONY

### 1. Gerlene Griffith - Claimant

Claimant testified that her depression, and thus her disability, began when she was diagnosed with lupus, but she does not state when this diagnosis was made in 1995. Claimant takes the anti-depressant medication Paxil to treat her depression. (R. 69.)

At the 2002 administrative hearing, Claimant testified that she was stressed

and depressed, and began having panic attacks in 1998 and 1999. (R. 848, 874-75.) However, Claimant testified that she first told her counselor, Ms. Zarifi, about her panic attacks in 1999. (R. 877.) Her depression causes her to be irritable, and causes her to not care about anybody or anything. (R. 882.) During a panic attack she feels as though someone is going to get her, and that she's going to burn up. (R. 883.) She experiences panic attacks on a daily basis and as many as three times per day. (R. 884.) She does no chores at home and the only time she leaves the house is to go to the doctor. (R. 891.)

### 2. Susan Entenberg - Vocational Expert

Susan Entenberg ("Entenberg"), the same VE who appeared at the first hearing, testified at the remand hearing. She is a licensed clinical professional counselor in Illinois. (R. 84, 128.) She reviewed the case file and heard the Claimant's testimony regarding her work history. (R. 85.) The ALJ presented Entenberg with the following hypothetical regarding Claimant's mental capacity at the first hearing:

> [B]y reason of a depressive condition [the hypothetical individual] does not have the capacity to understand, recall, carry out complex or detailed instructions or to perform complex or detailed tasks, but does retain the capacity to understand, recall and carry out simple tasks and simple instructions on a sustained basis.

(R. 86-87.)

Entenberg testified that such a hypothetical individual could not perform the Claimant's prior work – which is classified as a sedentary semi-skilled job – due to

an inability to perform detailed, complex tasks, but would retain the ability to perform the full range of sedentary, unskilled work. (R. 86-88.) She testified that there are 3,000 assembly jobs, 2,000 packing jobs, and 1,000 inspection jobs within that category in the Chicago metropolitan area. (R. 87-89.)

Entenberg also testified at the 2002 administrative hearing held after the district court remand. (R. 903.) She stated that the jobs she had listed previously in her answer to the ALJ's hypothetical still exist in approximately the same numbers. (R. 907.) In addition to the original hypothetical posed at the 1999 administrative hearing, the ALJ included the following mental limitation:

> [The hypothetical individual] does not have the capacity to maintain such extended attention/concentration as would be required for the performance of complex detailed tasks at a sustained workman-like pace, but retains the capacity to understand, recall, focus upon, attend to and carry out simple instructions, and to focus upon, attend to, and perform simple tasks at a sustained workman-like pace.

(R. 906, 911-12.)

The VE replied that such a person could perform approximately 6,000 jobs as an assembler, inspector, and packer in the Claimant's designated region. (R. 907, 911-12, 915.)

The VE also stated that the hypothetical individual would have the capacity to maintain the attention/concentration required to focus on and perform simple tasks at a sustained workman-like pace for periods of two hours continuously throughout the workday, with ten to fifteen minute breaks provided after each such two hour period. (R. 912-13.) However, the VE testified that if an individual

could not perform mental activities of work, which would include sustaining attention, concentration and maintaining a sustained workman-like pace or sustaining work pressures for ninety percent of the day, all employment would be precluded. (R. 914-15.)

## C. CLAIMANT'S MEDICAL RECORDS AFTER FIRST HEARING

### 1. Dr. Michael Raymond, M.D. - Internal Medicine Consultative Exam

On April 10, 2000, Dr. Raymond conducted an internal medicine consultative evaluation. He reported that Claimant's range of motion in her cervical spine, lumbar spine, shoulders, elbows, wrists and fingers were all normal. (R. 787.) Her mental status including her memory, appearance, behavior and her ability to relate during the forty minute exam were normal. *Id.* She was polite, pleasant and able to relate a clear, concise, medical history. *Id.* She was diagnosed with systemic lupus erthematosus. (R. 788.)

### 2. Dr. Allan Nelson, M.D. - Psychiatric Evaluation

Dr. Allan Nelson performed a psychiatric evaluation of the on April 10, 2000. (R. 789.) The Claimant was cooperative and appropriate, but she was quite depressed, withdrawn, and preoccupied, and she exhibited some retardation of thinking. (R. 789-90.) The Claimant stated that she developed panic attacks over the past year, and that those panic attacks occur two times each day. (R. 789.) She had a depressed affect, and she was withdrawn and had difficulty concentrating.

(R. 790.) The Claimant had no suicidal ideations, delusions, or hallucinations, and she had no history of any psychotic episodes. (R. 789-90.) She was oriented and had mild memory impairments (R. 790), her judgment was intact, and her insight was good (R. 791.) Dr. Nelson diagnosed a developing depressive disorder and panic disorder. (R. 791.)

### 3. Tyrone C. Hollerauer, Psy. D. - Non-Examining Consultant Psychologist

Dr. Tyrone Hollerauer, a state agency psychologist, reviewed the Claimant's mental record, and on May 9, 2000 he assessed her ability to work. (R. 794-803.) Dr. Hollerauer found that the Claimant was unable to work. (R. 794-797.)

### 4. Dr. Neal Florence, M.D. - Treating Physician

Dr. Neal Florence evaluated the Claimant on July 12, 2000. (R. 815.) Dr. Florence noted that she had experienced panic attacks for ten months. (R. 815.) Dr. Florence found that the Claimant was anxious, she had no hallucinations, and her ability to concentrate was mildly reduced. (R. 816.) Dr. Florence opined she was unable to work because of her physical and mental condition. (R. 817.)

### 5. Dr. Carl Hermameyer, PhD. - State Agency Psychologist

Dr. Carl Hermameyer, a state agency psychologist, reviewed the Claimant's mental record, and on August 8, 2000 he assessed her condition. (R. 825-33.) Dr. Hermameyer found that the Claimant's condition met Listing 12.04. (R. 825.)

### 6. Virginia Zarifi - Treating Counselor

In April or May 2000, Ms. Virginia Zarifi, a counselor, provided the Claimant's treatment summary. (R. 834.) Ms. Zarifi noted that the Claimant began treatment in December 1998, with a diagnosis of chronic, moderate, major depressive disorder. (R. 834.) Ms. Zarifi also stated that in October 1999, the Claimant was diagnosed with panic disorder with agoraphobia. (R. 834.) The Claimant complained of forgetfulness, fatigue, difficulty concentrating, emotional liability, reduced attention span, thought disturbances, and emotional withdrawal. (R. 834.) Ms. Zarifi found that the Claimant's major depressive disorder and panic disorder, together with her medical condition, significantly impaired her ability to function and sustain employment. (R. 835.)

### D. ALJ's DECISION – NOVEMBER 22, 1999

On November 22, 1999, the ALJ issued an unfavorable decision denying Claimant's DIB. (R. 17- 31.) Judge Pallmeyer summarized the ALJ's decision in her opinion and that summary is incorporated by reference. (R. 688-93.) The ALJ concluded that Claimant could not perform any past relevant work yet she could perform the sedentary unskilled jobs of assembler, inspector, or packager, with respectively 3,000, 1,000, and 2000 jobs available in her regional economy. (R. 28, 29, 31.) Thus, he determined that Claimant was never under a "disability" as defined by the Social Security Act. (R. 31.)

## E. DISTRICT COURT DECISION – FEBRUARY 6, 2002

Judge Pallmeyer agreed that Claimant's disability did not meet the requisite level of severity, but found that the record was inadequate to support the ALJ's determination that Claimant had the RFC to work. (R. 699.) The district court ruled that the ALJ's finding as to her employability is not supported by substantial evidence in light of a discrepancy between the ALJ's objective medical findings and the hypothetical question he posed to the VE. (R. 698-99.)

The ALJ found on November 20, 1999 that Claimant's depressive disorder often caused deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner. (R. 34.) However, such limitations were not included in the ALJ's RFC finding, which concluded that Claimant's mental impairments preclude her from "understanding, remembering, and/or carrying out detailed and complex work instructions and/or tasks." (R. 22.)

As a result, Judge Pallmeyer found that the ALJ's hypothetical question to the VE included a reference to an arguably less-severe condition than "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner." (R. 699.) The only mental limitation included in the hypothetical question was as follows:

> [B]y reason of a depressive condition [a worker like Claimant] does not have the capacity to understand, recall, carry out complex or detailed instructions or to perform complex or detailed tasks, but does retain the

9

capacity to understand, recall and carry out simple tasks and simple instructions on a sustained basis.
(R. 87.)

The VE determined that Claimant could "maintain production" if she could alternate sitting for forty-five minutes and standing for five minutes, but not if she could sit for only thirty minutes before having to stand. (R. 92-93.) The court found that omitting any reference to Claimant's difficulties of concentration might well have affected the VE's conclusion, given her testimony that forty-five minutes was adequate to enable Claimant to work but thirty minutes was not. (R. 699.)

Thus, Judge Pallmeyer held that the VE's testimony was not probative of which jobs Claimant could perform because the omission from the hypothetical question could have affected her testimony. (R. 700-01.) Claimant's attorney did not pose an additional hypothetical addressing the omitted impairment, and the ALJ's hypothetical does not appear to have fully reflected his conclusions about Claimant's mental impairments. (R. 700.) While the VE did review the record prior to the hearing and attend Claimant's testimony, the court concluded that the ALJ propose another hypothetical that will sufficiently determine the effect of Claimant's mental condition on her ability to maintain production. *Id.* Therefore the court concluded that the case must be remanded to re-determine Claimant's RFC and determine whether Claimant could perform any jobs in the national economy. (R. 702.)

Judge Pallmeyer found an additional ambiguity in the medical record significant enough to warrant remand, specifically Dr. Drevlow's reports. (R. 701.) However, prior to the 2002 administrative hearing, Dr. Drevlow sufficiently clarified his assessment, which rendered moot any issue regarding such evidence.

## F. ALJ's DECISION – DECEMBER 26, 2002

On December 26, 2002, the ALJ issued a partially favorable decision, finding Claimant disabled as of October 1, 1999. (R. 647-60.) Pursuant to Judge Pallmeyer's remand order, the ALJ re-determined Claimant's RFC and determined whether Claimant could perform any jobs in the national economy.

After considering the entire record, the ALJ determined that Claimant's RFC prior to October 1, 1999 is in relevant part as follows:

> [Claimant] does not possess the capacity to maintain such extended attention/concentration as would be required for the performance of complex detailed tasks at a sustained workman-like pace; but retains the capacity to understand, recall, focus upon, attend to, and carry out simple instructions, and to focus upon, attend to, and perform simple tasks at a sustained workman-like pace.

(R. 653.)

Specifically, the ALJ found that from her onset date through September 30, 1999, Claimant exhibited only moderate limitation in activities of daily living and maintaining concentration, persistence and pace, and mild limitation in social functioning. (R. 652.)

The ALJ then presented the VE with the following hypothetical to address Claimant's new RFC:

[Individual] does not possess the capacity to maintain such extended attention/concentration as would be required for the performance of complex detailed tasks at a sustained workman-like pace; but retains the capacity to understand, recall focus upon, attend to, and perform simple tasks at a sustained workman-like pace.

(R. 906, 911-12.)

With respect to the period prior to October 1, 1999, the VE opined that the same jobs as identified under the RFC presented in the 1999 hearing remained available to Claimant even under the new hypothetical posed by the ALJ. (R. 913.)

After reviewing the medical evidence and considering the reports of the many doctors who examined Claimant, the ALJ determined that the objective medical evidence did not warrant additional limitations. (R. 658.) With the exception of Ms. Zarifi's reports, the ALJ found that Claimant's mental disability was moderate during the period at issue. Moreover, according to the reports of Drs. Nelson and Florence, Claimant's panic attacks appeared to begin after September 1999. (R. 655-57.) As a result, the ALJ determined that Claimant could perform a limited range of sedentary work and she was not disabled during the period prior to October 1, 1999. (R. 660.)

## II. LEGAL STANDARDS

### A. STANDARD OF REVIEW

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). An

ALJ's decision becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v. Halala*, 997 F.2d 321, 322 (7th Cir. 1993). Under such circumstances, the decision reviewed by the district court is the decision of the ALJ. *Ears v. Secy. of the Depot of Health & Human Serve.*, 983 F.2d 815, 816 (7th Cir. 1993).

Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support the findings. *Socially v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Cater*, 55 F.3d 300, 306 (7th Cir. 1995) (citing *Richardson v. Paralyze*, 402 U.S. 389, 401 (1971)). A mere scintilla of evidence is not enough. *Id.* Even if there is adequate evidence in the record to support the decision, the findings will not be upheld if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sachet v. Cater*, 78 F.3d 305, 307 (7th Cir. 1996). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A reviewing court must conduct a "critical review" of the evidence before affirming the Commissioner's decision, *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), but does not re-evaluate the facts, re-weigh the evidence, or substitute

its own judgment for that of the Social Security Administration, *Diaz,* 55 F.3d at 305-06. Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence to support the findings. *Id.; Socially,* 966 F.2d at 1075. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## B.   DISABILITY STANDARD

Disability insurance benefits are available to claimants who can establish "disability" under the terms of the Social Security Act. *Brewer v. Carter,* 103 F.3d 1384, 1390 (7th Cir. 1997). An individual is disabled if that individual has the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, a disabled individual is eligible for DIB only if that individual is under a disability. *Id.* § 423(a). An individual is under a disability if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. *Id.* § 423(d)(2)(A).

The Commissioner uses a five-step sequential process in order to determine if an individual is disabled. 20 C.F.R. § 404.1520(a). The sequential evaluation

ends if, at any step of the process, the ALJ finds that the claimant is not disabled. *Id.* The ALJ must inquire: (1) whether the claimant is working in any substantial gainful activity; (2) whether the claimant's impairment is severe; (3) whether the impairment meets or equals a listed impairment in 20 C.F.R., pt. 404, subpt. P, App. 1; (4) whether the claimant is able to perform her past relevant work; and (5) whether the claimant's age, education, and past relevant work experience in reference to her RFC, enable her to do other work. *Id.* § 404.1520(a)(4)(i)-(v). In order to determine whether the claimant can perform any past relevant work (step 4), the ALJ assesses the claimant's RFC. *Id.* § 404.1520(e). The RFC is defined as the most an individual can do after considering the effects of physical and mental limitations that affect her ability to perform work-related activities. *Id.* § 404.1545. The burden of proof is on the claimant through step four; the burden shifts to the Commissioner only at step five. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000). At step five of the disability analysis, the Commissioner has the burden of proving that Claimant has the ability to engage in other work existing in significant numbers in the national economy. *Young v. Secy. of Health & Human Serve.,* 957 F.2d 386, 389 (7th Cir. 1992).

## III. DISCUSSION

Claimant raises two issues for review: (1) whether the ALJ failed to comply with the district court's remand order; and (2) whether the ALJ's RFC finding

prior to October 1, 1999 is based on substantial evidence. The Court will address each issue in turn.

## A. THE ALJ COMPLIED WITH THE DISTRICT COURT'S REMAND ORDER

Claimant alleges that the ALJ once again failed to include her mental limitation of deficiencies in concentration, persistence or pace in his hypothetical question to the VE. (Claimant's Brief "(C.B.)" at 7.) This Court disagrees.

In the 1999 administrative hearing, the ALJ found that Claimant often had deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner. (R. 34.) The ALJ presented an arguably inconsistent RFC, which concluded that Claimant's mental impairments preclude her from "understanding, remembering, and/or carrying out detailed and complex work instructions and/or tasks." (R. 22.) Such an RFC failed to address Claimant's deficiencies in concentration, persistence and pace and may have resulted in an insufficient hypothetical posed to the VE at the 1999 administrative hearing:

> [The hypothetical individual] does not have the capacity to understand, recall, carry out complex or detailed instructions or to perform complex or detailed tasks, but does retain the capacity to understand, recall and carry out simple tasks and simple instructions on a sustained basis.

(R. 86-87.)

However, following Judge Pallmeyer's remand order, the ALJ sufficiently incorporated the mental deficiencies of "concentration, persistence or pace resulting in failure to complete tasks in a timely manner" in his 2002 RFC finding,

as follows:

> [Claimant] does not possess the capacity to maintain such extended
> *attention/concentration* as would be required for the performance of
> *complex* detailed tasks at a *sustained workman-like pace*; but retains
> the capacity to understand, recall, focus upon, attend to, and carry out
> simple instructions, and to focus upon, attend to, and perform *simple*
> tasks at a *sustained workman-like pace*.

(R. 653 (emphasis added).)

In accordance with the ALJ's new RFC finding, the hypothetical individual

posed to the VE at the 2002 administrative hearing is listed below:

> [The hypothetical individual] does not possess the capacity to
> maintain such extended *attention/concentration* as would be required
> for the performance of *complex* detailed tasks at a *sustained
> workman-like pace*; but retains the capacity to understand, recall,
> focus upon, attend to, and perform *simple* tasks at a *sustained
> workman-like pace*.

(R. 906, 911-12 (emphasis added).)

The VE replied that such a person described in the 2002 hypothetical, like the

Claimant, could perform about 6,000 jobs in the region as an assembler, inspector,

and packer. (R. 907, 911-12.) The VE continued to state that the hypothetical

individual would have the capacity to maintain the attention/concentration required

to focus on and perform *simple* tasks at a sustained workman-like pace for periods

of two hours continuously throughout the workday, with ten to fifteen minute

breaks. (R. 912-13.) Claimant contends that the ALJ's delineation of simple and

complex tasks renders the new hypothetical question identical to the first posed in

the 1999 administrative hearing. (Claimant's Reply Brief "(C.R.)" at 2.)

While a better hypothetical would have included the limitation that the individual does not possess the capacity to maintain such extended attention/concentration as would be required for the performance of *simple* tasks at a sustained workman-like pace, such an omission is insufficient alone to reverse the ALJ's decision. Although the new hypothetical did not specifically include the terms "concentration" or "persistence" in the second phrase regarding *simple* tasks, the ALJ's mention of "capacity to understand," "focus upon," and "attend to" encompass such terms when coupled with the time limitation of a "workman-like pace." Regardless, the VE clarified any ambiguity when she stated that such a hypothetical person would have the capacity to maintain the attention/concentration required to focus on and perform *simple* tasks at a sustained workman-like pace. (R. 912-13.) Therefore, the ALJ complied with the district court's remand order.

## B. THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY FINDING PRIOR TO OCTOBER 1, 1999 WAS BASED ON SUBSTANTIAL EVIDENCE

Claimant offers three arguments as to why the ALJ's RFC finding prior to October 1, 1999 was not based on substantial evidence: (1) the evidence of the record shows that Claimant's social functioning did not change during her alleged period of disability; (2) the ALJ ignored evidence of the severity of Claimant's concentration problems resulting from her depression; and (3) the ALJ's RFC

assessment is contrary to the medical evidence provided at the 2002 administrative hearing. (C.B. 9-12.)

## 1. The record provides sufficient evidence that proves Claimant's social functioning changed during her alleged period of disability

Claimant first alleges that her social functioning did not change during her alleged period of disability, and therefore she should not be denied a "disability" finding for the period *before* October 1, 1999 if she was granted a "disability" finding for the period *after* October 1, 1999. (C.B. 10.) This Court disagrees.

Claimant testified at the 2002 administrative hearing that her condition has worsened, specifically in the form of panic attacks. (R. 884.) Since the onset of these attacks, Claimant's fatigue has worsened; she is no longer able to "go out" alone; and the frequency of the attacks increased to three per day some time in 2000. (R. 874-75, 877, 884.)

In addition to Claimant's own testimony, the reports of Drs. Nelson and Florence, and Claimant's counselor, Ms. Zarifi, evince Claimant's worsening mental condition. In April 2000, Dr. Nelson reported that Claimant developed panic attacks in the past year. (R. 789.) In July 2000, Dr. Florence noted that Claimant experienced panic attacks for the past ten months. (R. 815.) Ms. Zarifi reported that in October 1999 Claimant was diagnosed with panic disorder. (R. 834.)

While Claimant's panic disorder is the only symptom that has definitively worsened since the 1999 administrative hearing, the attacks are the cause of several different ailments. Claimant testified that her panic attacks cause her to "freeze," experience a burning sensation that forces her to disrobe, become momentarily deaf, and feel as though someone is going to get her. (R. 874, 882, 888.) The severity of Claimant's panic attacks and the four evidentiary sources that suggest the panic attacks began in October 1999 sufficiently prove that Claimant's social functioning changed as of October 1, 1999.

### 2. The ALJ's failure to discuss both Ms. Zarifi's report and Ms. Jean-Paul's report in the 2002 administrative hearing is not legal error

Claimant next claims that the ALJ ignored evidence of the severity of Claimant's concentration problems resulting from her depression. Specifically, Claimant argues that the ALJ did not consider the reports from Ms. Zarifi or Claimant's caseworker, Ms. Jean-Paul. *Id.* However, the ALJ discussed Ms. Zarifi's report and Ms. Jean-Paul's report in the 2002 administrative hearing. Regarding Ms. Zarifi's report, the ALJ found that her notes provided little probative value because of internal inconsistencies and Ms. Zarifi's observation that Claimant had "responded well to treatment." (R. 26, 655.)

The ALJ afforded even less credit to Ms. Jean-Paul's reports because they provided "no time of reference," a factor of utmost importance in determining the issue at bar. (R. 655.) Just because the ALJ did not adopt the reports of Ms. Zarifi

and Ms. Jean-Paul does not mean he did not consider such evidence. After weighing all relevant evidence in the record, the ALJ found the reports of Drs. Nelson and Florence to be more persuasive. (R. 657.) Therefore, the ALJ's decision to not rely on the evidence provided by Ms. Zarifi and Ms. Jean-Paul is not legal error.

### 3. The ALJ's RFC assessment is not contrary to the medical evidence provided at the 2002 administrative hearing

Claimant finally states that the ALJ's RFC assessment is contrary to the medical evidence provided at the 2002 administrative hearing. (C.B. 11.) Again, the ALJ considered the medical evidence from Claimant's subsequent application and based on those reports granted her partial relief commencing October 1, 1999. While the reports of the agency physicians and Drs. Raymond, Nelson and Florence were recorded during 2000, the *substance* of those reports referred only to the condition of Claimant around or after October 1, 1999. The ALJ's RFC assessment finds strong support in the medical evidence including the significant change in her condition on or about October 1, 1999.

## V. CONCLUSION

The ALJ's opinion complied with the district court's remand order and was supported by substantial evidence. For the reasons set forth in this opinion, **Claimant's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted. The Commissioner's decision to**

deny Claimant's disability insurance benefits prior to October 1, 1999 is affirmed.

**SO ORDERED THIS 3rd DAY OF DECEMBER, 2004**

_Morton Denlow_
**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

Copies Mailed to:

Christine M. Naper
2701 N. Marshfield Ave.
Chicago, IL 60614

Henry S. Kramzyk
Special Assistant United States Attorney
200 W. Adams Street, 30th Floor
Chicago, Il 60606

Counsel for Plaintiff

Counsel for Defendant